1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ROBIN GNESA,                              No. 2:12-CV-2298-CMK

12              Plaintiff,

13         vs.                                 <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,

15              Defendant.

16   _____/

17

18         Plaintiff, who is proceeding with retained counsel, brings this action under

19   42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22   before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-

23   motion for summary judgment (Doc. 20).

24   / / /

25   / / /

26   / / /

1

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on February 2, 2010.  In the application, plaintiff claims that disability began on May 30, 2006.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on August 11, 2011, before Administrative Law Judge ("ALJ") Carol L. Buck.   In a September 15, 2011, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1.   The claimant has the following severe impairment(s): bipolar disorder, depression type, panic attack disorder, posttraumatic stress disorder, alcohol abuse disorder, substance abuse disorder in remission, status post left ankle fracture, and obesity;
>
> 2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3.   The claimant has the following residual functional capacity: the claimant is capable of light work; she can lift/carry 20 pounds occasionally and 10 pounds frequently; she can stand/walk for 2 to 4 hours in an 8-hour day; she can sit for 6 hours in an 8-hour day; she can never climb ladders, ropes, or scaffolds; she can frequently stoop, balance, kneel, crouch, or crawl; the claimant is limited to unskilled work with limited public contact; she cannot perform tandem work, in that she cannot work with another where she is required to work together with another to process the work; and
>
> 4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on July 9, 2012, this appeal followed.

# II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

(9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ's vocational finding is not supported by substantial evidence as to the number of representative jobs; (2) the ALJ erred in giving lay witness evidence from plaintiff's boyfriend, Robert Myers; and (3) the ALJ erred in evaluating the medical opinion evidence as to plaintiff's mental limitations.

### A.    Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285

1  (9th Cir. 1996); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

2  to the opinion of a non-examining professional.  <u>See</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4

3  (9th Cir. 1990).

4                In addition to considering its source, to evaluate whether the Commissioner

5  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

6  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

7  uncontradicted opinion of a treating or examining medical professional only for "clear and

8  convincing" reasons supported by substantial evidence in the record.  <u>See</u> <u>Lester</u>, 81 F.3d at 831.

9  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

10 by an examining professional's opinion which is supported by different independent clinical

11 findings, the Commissioner may resolve the conflict.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035,

12 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

13 rejected only for "specific and legitimate" reasons supported by substantial evidence.  <u>See</u> <u>Lester</u>,

14 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

15 the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

16 finding.  <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

17 legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

18 professional.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.  The opinion of a non-examining professional,

19 without other evidence, is insufficient to reject the opinion of a treating or examining

20 professional.  <u>See</u> <u>id.</u> at 831.  In any event, the Commissioner need not give weight to any

21 conclusory opinion supported by minimal clinical findings.  <u>See</u> <u>Meanel v. Apfel</u>, 172 F.3d 1111,

22 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

23 <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.

24 / / /

25 / / /

26 / / /

Plaintiff argues that the ALJ erred with respect to evaluation of the medical opinions relating to limitations caused by her mental impairments.   Specifically, plaintiff argues that the ALJ "never assigns weight to . . . treating evidence. . ." from Sacramento County Mental Health.  Plaintiff also argues that the ALJ erred by failing to cite sufficient reasons for rejecting the opinion of Dr. Canty, an agency examining psychiatrist, in favor of the opinion of a non-examining source, Dr. Meenkashi.

1.    Sacramento County Mental Health

Plaintiff argues that the ALJ "violated the treating physician rule" by not discussing records from Sacrament County Mental Health, a treating source.  Plaintiff, however, has not identified medical opinions regarding plaintiff's ability to function offered by any doctor with Sacramento County Mental Health.  The ALJ cannot have erred by failing to discuss an opinion which does not exist.

2.    Drs. Canty and Meenkashi

As to Dr. Canty, the ALJ stated:

On June 15, 2010, consultative psychiatrist, Dr. Timothy Canty, examined the claimant for complaints of bipolar disorder, panic disorder, and alcohol abuse disorder. . . .

* * *

Dr. Canty's [mental status examination] revealed the claimant was well groomed and she occasionally smiled.  Her speech was clear and she was cooperative.  Her thought content was clear, logical, and goal-directed. She denied psychosis, suicidal or homicidal ideation.  She described her typical mood as, "I feel like I've lost my spark."  Her current mood is flat. During the interview she appeared to be in a fairly even mood with a full affect.  Intellectual functioning revealed she was oriented to day, date, month, and year.  She had good immediate and recent recall and her fund of knowledge was good.  She performed calculations correctly and was able to concentrate in order to complete a drawing exercise.  (Ex. 7F/3).

Dr. Canty diagnosed the claimant with bipolar II disorder, anxiety disorder, NOS, versus panic disorder, and intermittent alcohol abuse.  He assessed her GAF as variable between 50 and 60.  Dr. Canty opined that functionally, "her greatest difficulty stems from anxiety.  It is anxiety that leads her to stop attending work.  Her anxiety restricts many of her activities and would make consistent work attendance and productivity

1   unrealistic.  She may be able to interact appropriately with coworkers and
2   supervisors for brief periods but she would not be able to sustain this for
    more than a few weeks at a time.  Even when at work, I suspect her
    anxiety would significantly degrade her productivity." (Ex. 7F/5).  The
3   undersigned notes that Dr. Canty's finding that the claimant's anxiety
    would preclude all work is unsupported by the treating records which, as
4   discussed above, show the claimant is psychologically stable while
    compliant with her medications and that when she has had exacerbations
5   of her mental status they have been due to her intermittent binge-type
    alcohol abuse and/or recreational use of Soma, and after re-establishment
6   of medications she stabilized.  The undersigned therefore rejects Dr.
    Canty's opinion and assigns it little weight.
7

8   As to Dr. Meenkashi, the ALJ stated:

9   On July 9, 2010, Disability Determination Service reviewing physician Dr.
    V. Meenkashi, M.D., reviewed the medical evidence of record and
10  prepared a Mental Residual Functional Capacity Assessment.  He opined
    the claimant was not significantly limited in her ability to remember
11  locations and work-like procedures, understand and remember very short
    and simple instructions.  She was moderately limited in her ability to
12  understand and remember detailed instructions.  Regarding sustained
    concentration and persistence, he opined her ability to carry out very short
13  and simple instructions was not significantly impaired as was her ability to
    maintain attention and concentration for extended periods, perform
14  activities within a schedule, maintain regular attendance, and be punctual
    within customary tolerances.  She is not significantly limited in her ability
15  to sustain an ordinary routine without special supervision.  She was
    significantly limited in her ability to understand, remember, and carry out
16  detailed instructions and in her ability to work in coordination or
    proximity to others without being distracted by them.  She can make
17  simple work related decisions.  She was not significantly limited in her
    ability to complete a normal workday and workweek without interruption
18  from psychologically based symptoms and to perform at a consistent pace
    without an unreasonable number and length of rest periods.  She was
19  moderately limited in her ability to interact with the public and respond
    appropriately to changes in the work setting.  Dr. Meenkashi opined the
20  claimant could perform simple tasks with limited public contact.  (Ex. 9F).
    This opinion is well supported by the medical evidence and consistent
21  with other substantial evidence in the record.  Accordingly, the
    undersigned assigns great weight to this opinion.
22

23  Plaintiff argues that the ALJ erred by accepting the opinion of a non-examining

24  source – Dr. Meenkashi – over the opinion of an examining source – Dr. Canty.  As indicated

25  above, Dr. Canty's opinion can only be rejected for specific and legitimate reasons, which the

26  court finds the ALJ has adequately set forth.  In particular, the ALJ noted the inconsistency

1  between Dr. Canty's extreme opinion that anxiety would preclude all work and treating source

2  records which showed that plaintiff's condition improved when she was compliant with

3  medications.  Given this inconsistency, the ALJ was entitled to rely on Dr. Meenkashi's opinion.

4       **B.**    **Lay Witness Evidence**

5          In determining whether a claimant is disabled, an ALJ generally must consider lay

6  witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

7  919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

8  testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

9  evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

10  F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony

11  of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

12  919.  The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party

13  statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin.,

14  574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's

15  testimony, which was similar to the claimant's, for the same reasons given for rejection of the

16  claimant's complaints).

17          As to Mr. Myers, the ALJ stated:

18  The claimant's long time boyfriend, Robert Myers, testified on behalf of
    the claimant.  He stated he has known the claimant for twelve years.  They

19  have cohabitated since 2004.  The witness is employed by the Employment
    Development Department as an employment program representative in a

20  job service office.  he testified that he observed that during the last time
    she was employed in 2006, she would not get up to go to work and this

21  happened at least once per week as far as he could recollect.  Regarding
    her manic episodes of bipolar disorder, he corroborated she stays up for

22  three days at a time and will wake him to share ideas with him or tell him
    about something she saw on television.  He testified that during this phase,

23  she accomplishes chores but the quality of her work is lacking.  He stated
    she will put dishes in the dishwasher but fail to clean up the counters.  She

24  talks on the phone a lot.  In her depressed state, he observes that she
    isolates herself in the bedroom and sleeps and she fails to bathe.  During

25  this time, he must perform the cooking and cleaning.  He reported that he
    has lent her the car to pick him up from work and she forgets to pick him

26  up.  She forgets to put laundry in the dryer or forgets to fold and put away

1   the laundry.

2   The ALJ then discussed plaintiff's testimony, finding is not credible – a finding plaintiff does not

3   challenge.  The ALJ then continued her discussion of Mr. Myers' statements as follows:

4       . . .His testimony and statement reiterate the statements from the claimant
and support the claimant's allegations.  While Mr. Myers' statements are

5   sincere, they reflect his opinion and are inconsistent with the medical
evidence and medical opinion in this case.  Thus, the undersigned assigns

6   this opinion little weight.

7       The court finds no error in the ALJ's analysis of Mr. Myers' testimony.  It is clear

8   from the hearing decision that the ALJ rejected his statements for the same reasons cited for

9   rejecting plaintiff's own credibility, a finding plaintiff does not challenge.  The ALJ was entitled

10  to discount Mr. Myers' testimony for the same reasons given for rejecting plaintiff's statements.

11  See id.

12      **C.**    **Vocational Finding**

13      The ALJ made the following vocational finding:

14      If the claimant had the residual functional capacity to perform the full
range of light work, a finding of "not disabled" would be directed by

15  Medical-Vocational Rule 202.21.  however, the claimant's ability to
perform all or substantially all of the requirements of this level of work

16  has been impeded by additional limitations.  To determine the extent to
which these limitations erode the unskilled light occupational base, the

17  Administrative Law Judge asked the vocational expert whether jobs exist
in the national economy for an individual with the claimant's age,

18  education, work experience, and residual functional capacity.  The
vocational expert testified that given all oft these factors the individual

19  would be able to perform the requirements of representative occupations
such as an inspector tester (nut sorter) (DOT #521.687-086) which is a

20  sedentary exertional level semiskilled (SVP 2) job of which there are
1,400 jobs available in California and 9,000 jobs available nationally; an

21  assembler (optical goods) (DOT #713.687-018) which is a sedentary
exertional level semiskilled (SVP 2) job of which there are 40 jobs

22  available locally, 1,500 jobs available in California, and 8,000 jobs
available nationally.

23

24  / / /

25  / / /

26  / / /

1   Plaintiff argues:

2            The vocational expert specifically testified job numbers for the two
jobs he adduced and the decision relied on the denial were "negligible,"
3       and "small negligible" within "the four county region [of Sacramento],"
mentioning the number 40 for the second job. (citation to transcript
4       omitted). The burden at step five of showing jobs exist which a claimant
can do is on the Commissioner. While interpretation of the relevant
5       sentence in the Social Security Act's underlying disability definition . . .
has always been fraught and imprecise, it is now clear both that
6       insignificant regional numbers cannot be made up for with significant
national numbers (which in any case the VE did not adduce here), and that
7       the VE testimony here cannot support a denial. (citation omitted).

8       The issue is whether representative jobs exist in "significant numbers" in either

9   the local economy or the national economy. see 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §

10   404.1560(c); see also Beltran v. Astrue, 676 F. 3d 1203, 1206-07 (9th Cir. 2012). The Ninth

11   Circuit has never assigned a minimum number which constitutes "significant numbers." See

12   Beltran, 676 F.3d 1206. Plaintiff has cited no cases supporting the conclusion that the numbers

13   of representative jobs identified in this case – 9,000 and 8,000 – are not significant. Indeed, in

14   Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), the court concluded that 1,000 to 1,500

15   jobs constituted significant numbers. Here, the court finds that the numbers identified by the

16   vocational expert are significant and that the ALJ's vocational finding is supported by substantial

17   evidence.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

      1.    Plaintiff's motion for summary judgment (Doc. 18) is denied;

      2.    Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

      3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 31, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE